William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
488 Madison Ave., Suite 1100
New York, New York 10022
Phone: (212) 286-1425; Fax: (646) 688-3078
Co-Counsel
Do Kyung Kim (DK 1352)
LAW FIRM OF DK & ASSOCIATES, P.C.
150-03 Northern Blvd., Second Floor
Flushing, NY 11355
Tel.: (718) 460-2435; Fax: (888) 456-7938
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KI DONG JUNG, OSCAR MORI, and           :
RUDY VALDEZ, on Behalf of Themselves    :      ECF
And all others Similarly Situated,      :
                                        :      2:13 Civ. 4020 (JS)(WDW)
            Plaintiffs,                 :
                                        :      **AMENDED**
      -against-                         :      **COMPLAINT**
                                        :
MAL SOON KIM, YEO HAN KIM, and          :
INTERNATIONAL LEATHER CARE              :
COMPANY CORP.                           :
                                        :
            Defendant.                  :
------------------------------------------------------------X

      Plaintiffs KI DONG JUNG, OSCAR MORI, and RUDY VALDEZ (together

"Plaintiffs"), individually and as collective action representatives of other employees similarly

situated, by and through their attorneys, complain and allege for their amended complaint against

MAL SOON KIM, YEO HAN KIM, and INTERNATIONAL LEATHER CARE COMPANY

CORP., and John Does #1-10 (together "Defendants" or "Defendant") as follows:


                              <u>NATURE OF ACTION</u>

      1.      This is an action seeking recovery of unpaid hourly wages, minimum wages, and

overtime wages, on behalf of Plaintiffs and similar employees who worked as dry cleaning

workers for Defendants, and were required to work in excess of 40 hours per week, and were at

all times paid a fixed, weekly salary, and were not paid minimum wages for all of their hours worked, and were not compensated at time and one half their regular rate of pay for hours worked in excess of forty hours per workweek ("overtime wages"), and were not paid an additional hour of pay for days in which they worked a spread of more than 10 hours.

2.     Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b), that they are: (i) entitled to unpaid wages from Defendants for work for which they did not receive minimum wages and/or overtime wages as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*.

3.     Plaintiffs further complain on behalf of themselves that they are entitled to back wages from Defendants for work for which they did not receive hourly wages including minimum wages and/or overtime wages, as well as spread of hours wages, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations and the New York common law.

4.     Plaintiffs further complain that they are entitled to $50 per workweek as a result of Defendants' failure to provide the notice required under the New York Wage Theft Prevention Act and $100 per week for Defendants' failure to provide a Wage and Hour Statement to Plaintiffs disclosing, inter alia, overtime hours worked and rates of pay.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over Plaintiffs' claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

      6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

      7.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## **PARTIES**

      8.     Plaintiff KI DONG JUNG, at all relevant times, has been an adult individual,

residing in Ridgefield Park, New Jersey.

      9.     Plaintiff OSCAR MORI, at all relevant times, has been an adult individual,

residing in the State of Florida.

      10.     Plaintiff RUDY VALDEZ, at all relevant times, has been an adult individual,

residing in Hemstead, New York.

      11.     Upon information and belief, Defendant, INTERNATIONAL LEATHER CARE

COMPANY CORP. ("Corporate Defendant"), is a domestic business corporation under the laws

of New York, with a principal place of business, and an address for service of process located at

393 South Franklin Street, Hempstead, New York 11550.

      12.     Upon information and belief, Defendants MAL SOON KIM and YEO HAN KIM

("individual defendants")  are the owners and/or chief executive officers of the Corporate

Defendant, and the direct supervisor of the Plaintiffs, and controlled and continue to control, the

day to day operations and management of the Corporate Defendant and jointly employed

Plaintiffs and other similarly situated employees at all relevant times.

13.     Upon information and belief, the individual defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

14.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of Defendants, whose identities are unknown at this time and who participated in the day-to-day operations of Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law § 2 and the regulations thereunder, and are jointly and severally liable with Defendants.

15.     Each Defendant, either directly or indirectly, has hired and/or fired Plaintiffs and other similar employees; controlled the work schedule and conditions of employment of Plaintiffs and similar employees; determined the rate and method of payments of Plaintiffs and similar employees; and kept at least some records regarding the employment of Plaintiffs and similar employees.

## COLLECTIVE ACTION ALLEGATIONS

16.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants at any time since July 15, 2006 to the entry of judgment in this case (the "Collective Action Period") (statute of limitations tolled for failure to post notice), who were non-exempt employees within the meaning of the FLSA and who were not paid for all of their hours worked, and/or

were not paid minimum wages, and/or overtime wages (the "Collective Action Members").

17.     This collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 40 Collective Action Members during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

18.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

19.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

20.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.   whether the Defendants employed the Collective Action Members within the meaning of the FLSA;

b.   whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c.   what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.   whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime wages rights provided by the FLSA in any area where Plaintiff is employed, in violation of C.F.R. § 516.4;

e.   whether Defendants failed to pay the Collective Action Members, minimum wages for hours worked, and/or overtime wages for their hours worked over 40 in a workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.   whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

g.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.   whether Defendants should be enjoined from such violations of the FLSA in the future.

21.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## STATEMENT OF FACTS

22.     Plaintiffs were employed by Defendants as dry cleaner workers, and were required to work in excess of 40 hours per week, and were at all times paid a fixed weekly salary, and were not paid minimum wages for all of their hours worked, were not compensated at time and one half their regular rate of pay for hours worked in excess of forty hours per workweek ("overtime wages"), and were not paid an additional hour of pay for days in which they worked a spread of more than 10 hours.

Ki Dong Jung

23.     KI DONG JUNG ("JUNG") was employed full time by Defendants as a dry cleaning technician from about May 2000 to March 22, 2013 (the "Jung time period").

24.     During the Jung time period, JUNG worked at Defendants' dry cleaning store located at 393 South Franklin Street, Hempstead, N.Y. 11550 which was named "ILCC CLEANERS/ LAUNDRY" (the "Store").

25.     Upon information and belief, MAL SOON KIM and YEO HAN KIM were the owners and managers of LEATHER CARE COMPANY CORP. and the Store.

26.     JUNG was hired by MAL SOON KIM and YEO HAN KIM, who at all relevant times were his direct supervisors.

27.     During the Jung time period, JUNG generally worked for Defendants for at least 50 hours per week and in certain weeks worked over 60 hours in a week.

28.     During the Jung time period, JUNG generally worked for Defendants 6 days a week, Monday through Saturday.

29.     During the Jung time period, JUNG generally started work before 8:00 a.m. and generally ended work after 6:00 p.m.

30.     During the Jung time period, Jung was paid a weekly salary in cash and sometimes in part by check.

31.     From JUNG's start date until September 2002, Jung was paid a salary of $600 per week.

32.     From September 2002 until about December 31, 2004, JUNG was paid a salary of $650 per week.

33.     From about December 31, 2004 until about December 31, 2006, JUNG was paid a salary of $700 per week.

34.     From about December 31, 2006 until about December 31, 2007, JUNG was paid a salary of $750 per week.

35.     From about December 31, 2007 until March 22, 2013, JUNG was paid a salary of $800 per week.

36.     JUNG did not sign in and out of his job or use a punch-card or scanner to punch in and out of his job, or scan in and out of his job.

37.     Therefore, during the Jung time period, JUNG was (1) not paid overtime compensation at rates not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per workweek, (2) not always paid minimum wages, and (3) not paid spread of hours premium pay for days in which he worked a spread of more than 10 hours, in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws.

38.     During the Jung time period, JUNG was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages").

39.     During the Jung time period, JUNG was not paid an additional hour of pay for days in which he worked a spread of more than 10 hours in a workday ("spread of hours pay").

40.     During the Jung time period, JUNG complained to MAL SOON KIM and YEO HAN KIM about not being paid time and one half for his hours worked over 40 in a week and they responded that Defendants' policy was not to pay overtime.

41.     During the Jung time period, Defendants controlled the hours that JUNG worked, how often JUNG worked, and how much JUNG was paid per hour.

42.     During the Jung time period, Defendants either directly or indirectly, hired JUNG, controlled JUNG's work schedule and conditions of employment, determined JUNG's rate and method of payment, and kept at least some records regarding JUNG's employment.

43.     During the Jung time period, JUNG's job did not require any independent initiative, or a degree of skill to perform his work.

44.     During the Jung time period, Defendants gave JUNG a work schedule.

45.     During the Jung time period, Defendants did not post any notice indicating that employees had a right to minimum wages and/or overtime.

46.     Upon information and belief, during the last three years, Defendants have employed at least 25 dry cleaning technicians similar to JUNG who all like JUNG were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid minimum wage and/or time and one half their regular wage rate for their overtime hours worked

9

and not paid an additional hour of work on days when they worked a spread of more than ten hours.

47.     Upon information and belief, during the last six years, Defendants have employed at least 40 different dry cleaning technicians similar to JUNG who all like JUNG were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid minimum wage and/or time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours.

48.     During the Jung time period, Jung was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and his specific rate of pay as required by the New York Wage Theft Prevention Act.

49.     During the Jung time period, JUNG has not been given any specific notice of this information to sign and has not signed any such notice.

50.     Upon information and belief, during the Jung time period, the other dry cleaning technician employees also were not given such notice.

<u>Oscar G. Mori</u>

51.     OSCAR G. MORI ("MORI") was employed full time by Defendants as a dry cleaning technician from January 1, 2001 through at least February 24, 2014 (the "Mori time period").

52.     During the Mori time period, MORI worked at Defendants' dry cleaning store located at 393 South Franklin Street, Hempstead, N.Y. 11550 which was named "ILCC CLEANERS/ LAUNDRY" (the "Store").

53.     Upon information and belief, MAL SOON KIM and YEO HAN KIM were the owners and managers of LEATHER CARE COMPANY CORP. and the Store.

54.     MORI was hired by MAL SOON KIM and YEO HAN KIM, who at all relevant times were his direct supervisors.

55.     During the Mori time period, MORI generally worked for Defendants 6 days a week, Monday through Saturday.

56.     During the Mori time period, MORI generally worked for Defendants for at least 50 hours per week and in certain weeks worked over 80 hours in a week.

57.     During the Mori time period, during the months of August through May, MORI was paid a salary of $530 per week.

58.     During the Mori time period, during the months of June and July, MORI was paid a salary of $450 per week.

59.     During the Mori time period, MORI was paid a weekly salary in cash.

60.     MORI did not sign in and out of his job or use a punch-card or scanner to punch in and out of his job, or scan in and out of his job.

61.     Therefore, during the Mori time period, MORI was (1) not paid overtime compensation at rates not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40)per workweek, (2) not always paid minimum wages, and (3) not

paid spread of hours premium pay for days in which he worked a spread of more than 10 hours, in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws.

62.     During the Mori time period, MORI was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages").

63.     During the Mori time period, MORI was not paid an additional hour of pay for days in which he worked a spread of more than 10 hours in a workday ("spread of hours pay").

64.     During the time period, MORI complained to MAL SOON KIM and YEO HAN KIM about not being paid time and one half for his hours worked over 40 in a week and they responded that Defendants' policy was not to pay overtime.

65.     During the Mori time period, Defendants controlled the hours that MORI worked, how often he worked, and how much he was paid per hour.

66.     During the Mori time period, Defendants either directly or indirectly, hired MORI, controlled his work schedule and conditions of employment, determined his rate and method of payment, and kept at least some records regarding his employment.

67.     During the Mori time period, MORI's job did not require any independent initiative, or a degree of skill to perform his work.

68.     During the Mori time period, Defendants gave MORI a work schedule.

69.     During the Mori time period, Defendants did not post any notice indicating that employees had a right to minimum wages and/or overtime.

70.     Upon information and belief, during the last three years, Defendants have employed at least 25 dry cleaning technicians similar to MORI who all like MORI were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid

minimum wage and/or time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours.

71.     Upon information and belief, during the last six years, Defendants have employed at least 40 different dry cleaning technicians similar to MORI who all like MORI were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid minimum wage and/or time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours.

72.     During the Mori time period, MORI was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and his specific rate of pay as required by the New York Wage Theft Prevention Act.

73.     During the time period, MORI has not been given any specific notice of this information to sign and has not signed any such notice.

74.     Upon information and belief, the other dry cleaning technician employees also were not given such notice.

Rudy Valdez

75.     RUDY VALDEZ (“VALDEZ”) was employed full time by Defendants as a dry cleaning technician from about June 2010 through at least February 24, 2014 (the "Valdez time period").

76. During the Valdez time period, VALDEZ worked at Defendants' dry cleaning store located at 393 South Franklin Street, Hempstead, N.Y. 11550 which was named "ILCC CLEANERS/ LAUNDRY" (the "Store").

77. Upon information and belief, MAL SOON KIM and YEO HAN KIM were the owners and managers of LEATHER CARE COMPANY CORP. and the Store.

78. VALDEZ was hired by MAL SOON KIM and YEO HAN KIM, who at all relevant times were his direct supervisors.

79. During the Valdez time period, VALDEZ generally worked for Defendants 6 days a week, Monday through Saturday.

80. During the Valdez time period, VALDEZ generally worked for Defendants for at least 50 hours per week and in certain weeks worked over 80 hours in a week.

81. During the Valdez time period, from June 2010 through December 31, 2012, VALDEZ was paid a salary of $400 per week.

82. During the Valdez time period, from January 1, 2013 to the present, VALDEZ was paid a salary of $450 per week.

83. During the Valdez time period, VALDEZ was paid a weekly salary in cash.

84. VALDEZ did not sign in and out of his job or use a punch-card or scanner to punch in and out of his job, or scan in and out of his job.

85. Therefore, during the time period, VALDEZ was (1) not paid overtime compensation at rates not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40)per workweek, (2) not always paid minimum wages, and (3) not paid spread of hours premium pay for days in which VALDEZ worked a spread of more than 10

14

hours, in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws.

86.     During the Valdez time period, VALDEZ was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages").

87.     During the Valdez time period, VALDEZ was not paid an additional hour of pay for days in which he worked a spread of more than 10 hours in a workday ("spread of hours pay").

88.     During the Valdez time period, VALDEZ complained to MAL SOON KIM and YEO HAN KIM about not being paid time and one half for his hours worked over 40 in a week and they responded that Defendants' policy was not to pay overtime.

89.     During the Valdez time period, Defendants controlled the hours that VALDEZ worked, how often he worked, and how much he was paid per hour.

90.     During the Valdez time period, Defendants either directly or indirectly, hired VALDEZ, controlled his work schedule and conditions of employment, determined his rate and method of payment, and kept at least some records regarding his employment.

91.     During the Valdez time period, VALDEZ's job did not require any independent initiative, or a degree of skill to perform his work.

92.     During the Valdez time period, Defendants gave VALDEZ a work schedule.

93.     During the Valdez time period, Defendants did not post any notice indicating that employees had a right to minimum wages and/or overtime.

94.     Upon information and belief, during the last three years, Defendants have employed at least 25 dry cleaning technicians similar to VALDEZ who all like VALDEZ were

paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid minimum wage and/or time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours.

95.     Upon information and belief, during the last six years, Defendants have employed at least 40 different dry cleaning technicians similar to VALDEZ who all like VALDEZ were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid minimum wage and/or time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours.

96.     During the Valdez time period, VALDEZ was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and his specific rate of pay as required by the New York Wage Theft Prevention Act.

97.     During the Valdez time period, VALDEZ has not been given any specific notice of this information to sign and has not signed any such notice.

98.     Upon information and belief, the other dry cleaning technician employees also were not given such notice.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT**

99.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.    At all relevant times, Defendants have been and continue to be, employers

16

engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

101.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

102.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

103.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiffs' written consents are attached hereto and incorporated by reference.

104.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages for all of their hours worked, and/or overtime wages for all of their hours worked over 40 in a workweek.

105.    As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members minimum wages and/or overtime wages the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

106.    As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

107.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

17

within the meaning of 29 U.S.C. § 255(a).

108.     Due to the Defendants' FLSA violations, Plaintiffs and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum wages and/or overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW

109.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.     At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

111.     Defendants willfully violated Plaintiffs' rights, and the rights by failing to pay them hourly wages, minimum wages, overtime wages, and spread of hours wages, in violation of the New York Labor Law and its regulations.

112.     The Defendants' New York Labor Law violations have caused Plaintiffs irreparable harm for which there is no adequate remedy at law.

113.     Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, overtime wages and spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

a. An order tolling the statute of limitations;

b. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of unpaid wages, including unpaid minimum wages, overtime wages and spread of hours wages, due under the FLSA and the New York Labor Law;

f. An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay minimum wages, overtime wages, and spread of hours wages, pursuant to 29 U.S.C. § 216 and the New York Labor Law;

19

g.   An award of statutory damages under the New York Wage Theft Prevention Act;

h.   An award of prejudgment and postjudgment interest;

i.   An award of costs and expenses of this action together with reasonable attorney's and expert fees; and

j.   Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the amended complaint.

Dated:  New York, New York
        April 25, 2014

LAW OFFICE OF WILLIAM COUDERT RAND

_____
William Coudert Rand, Esq. (WR-7685)
*Attorney for Plaintiffs*, Individually and on
Behalf of All Persons Similarly Situated
488 Madison Avenue, Suite 1100
New York, New York 10022
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

Co-Counsel
Do Kyung Kim (DK 1352)
LAW FIRM OF DK & ASSOCIATES, P.C.
Do Kyung Kim (DK 1352)
150-03 Northern Blvd., Second Floor
Flushing, NY 11355
Tel.: (718) 460-2435
Fax: (888) 456-7938
Attorney for Plaintiffs

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of

**MAL SOON KIM, YEO HAN KIM, and INTERNATIONAL LEATHER CARE COMPANY CORP.**

to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs` counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Signature _____   Date 1/10/14   Print Name KI DONG JUNG

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of

MAL SOON KIM, YEO HAN KIM, and INTERNATIONAL LEATHER CARE COMPANY CORP.

to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     02/08/14     OSCAR G. MORI
Signature                   Date     Print Name

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of

**MAL SOON KIM, YEO HAN KIM, and INTERNATIONAL LEATHER CARE COMPANY CORP.**

to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation. the method and manner of conducting this litigation. the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     02/18/14     Rudy Valdez
Signature                      Date     Print Name

8